UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ETHAN A. HOLMES, for himself and on
behalf of those similarly situated,

       Plaintiff,

v.                                 Case No: 2:16-cv-669-FtM-38MRM

SWISSPORT FUELING, INC. and
SWISSPORT SA FUEL SERVICES, LLC,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

       Pending before the Court is the Motion for Conditional Certification and Permission to

Send Court-Supervised Notification Pursuant to 29 U.S.C. § 216(b) (Doc. 50) filed on May 8,

2017.[2] Defendants filed a Response in Opposition (Doc. 65) on June 5, 2017. This matter was

referred to the Undersigned for a report and recommendation. For the reasons set forth herein,

the Court respectfully recommends that the Motion for Conditional Certification and Permission

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or
websites. These hyperlinks are provided only for users' convenience. Users are cautioned that
hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other
websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the
services or products they provide on their websites. Likewise, the Court has no agreements with
any of these third parties or their websites. The Court accepts no responsibility for the
availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or
directs the user to some other site does not affect the opinion of the Court.

[2] The Motion for Conditional Certification (Doc. 50) was filed prior to the operative First
Amended Complaint (Doc. 60). From a review of the Motion for Conditional Certification, it
appears that Plaintiff anticipated the filing of the Amended Complaint (Doc. 50) when he filed
the Motion for Conditional Certification. This is evinced by Plaintiff actually referring to the
Amended Complaint in the Motion for Conditional Certification. (*See*, *e.g.*, Doc. 50 at ¶ 2).

to Send Court-Supervised Notification (Doc. 50) be granted in part and denied in part as set forth below.

**I.      Background**

Plaintiff Ethan A. Holmes ("Holmes") filed a First Amended Complaint (Doc. 60) on May 17, 2017 against his alleged employers, Defendants Swissport Fueling, Inc. and Swissport SA Fuel Services, LLC, (collectively "Swissport") on his own behalf and on behalf of other similarly situated individuals.  (Doc. 60 at ¶¶ 1-2, 16).  Plaintiff raises one claim – a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219, – by alleging that Defendants failed to pay regular and/or overtime compensation.  (Doc. 60 at 3).  On February 6, 2017, Bradley Alderson, Brandon Buchanon, Carlos Diaz, and James Grant filed Consents to Join the case.  (*See* Docs. 28-31).  Giovanni Rodriguez and Kalyn Lady filed Consents to Join the case on March 17, 2017 and May 8, 2017 respectively.  (*See* Doc. 39 and 48).  To date, no others have joined as Opt-In Plaintiffs.

**A.      Allegations of the First Amended Complaint**

The underlying facts, as set forth in the First Amended Complaint (Doc. 60), are as follows.

Holmes was employed by Swissport from approximately November 23, 2012 through at least the date of the First Amended Complaint as an aircraft fueler for Swissport's operations at Southwest Florida International Airport ("RSW") located in Fort Myers, Florida.  (*Id.* at ¶ 16). In addition to Holmes, six (6) Opt-In Plaintiffs – Alderson, Buchanon, Diaz, Grant, Rodriguez, and Lady – either currently work for or were previously employed by Swissport as aircraft fuelers at RSW and were subject to the same policies and procedures as Holmes.  (*Id.* at ¶ 17). Generally, Swissport utilized a time recordkeeping system, "Attendance Enterprise."  (*Id.* at ¶

25). Holmes sets forth two distinct events regarding the failure of Swissport to pay regular and/or overtime compensation, namely: (1) an automatic deduction of two and one-half hours of pay per workweek from each employee's work hours; and (2) a "rounding" auto-deduction from each employee's work hours. (*See* Doc. 60 at 5-8; 8-12).

Beginning with the two and one-half (2.5) hour deduction, Swissport scheduled workweeks consisting of forty-two and one-half (42.5) hours. (*Id.* at ¶ 31). These workweeks comprised five (5) workdays per week at eight and one-half (8.5) hours per workday or four (4) days per week at ten and one-half (10.5) hours per workday. (*Id.* at ¶ 32). Holmes and other similarly situated individuals worked forty-two and one-half (42.5) hours per workweek. (*Id.* at ¶ 33). Swissport auto-deducted two and one-half (2.5) hours per workweek, specifically – thirty (30) minutes from each workday – from Holmes' and other similarly situated individuals' timesheets before paying their wages. (*Id.* at ¶ 34). Holmes assumes that the auto-deductions are for meal periods. (*Id.* at ¶ 36). Holmes claims that he and other similarly situated individuals are not afforded breaks or meal periods where "they are not required to be actively working or where they are completely relieved of their duties for the purposes of eating without interruption." (*Id.* at ¶ 37). Plaintiffs are always "'on-the-clock' and required to carry a walkie-talkie with them to be available on-command, and were expected to be, and usually were, called to action early due to frequent understaffing." (*Id.* at ¶ 37). The majority of meal breaks are taken when Holmes and other similarly situated individuals are in transit between aircrafts "because they know they will not be relieved for their break due to regular understaffing." (*Id.* at ¶ 38). Swissport's employee handbook and written policies and procedures do not provide information regarding any policies relating to meal periods or how to report their lack of meal breaks. (*Id.* at ¶ 39). Swissport was on notice of this issue through verbal complaints or was

constructively aware of the issue due to understaffing. (*Id.* at ¶ 40). Swissport failed to compensate Holmes and other similarly situated individuals for the time they worked during this thirty (30) minute deduction from their timesheets. (*Id.*). Holmes surmises that Swissport may have considered this thirty (30) minute deduction as down time, but Holmes and other similarly situated individuals remained on duty during this time without compensation. (*Id.* at ¶ 41). Thus, Holmes and other similarly situated individuals worked continuously – either actively working or on standby – for the entire eight and one-half (8.5) hour shift without receiving full compensation for this time. (*Id.* at ¶¶ 42-44). Swissport was notified by Holmes and was fully aware that Holmes and other similarly situated individuals were not afforded a thirty (30) minute break without interruption and knowingly decided to violate the FLSA by continuing to run understaffed shifts and by failing to compensate Holmes and other similarly situated individuals for the time they actually worked. (*Id.* at ¶ 46).

Next, Holmes claims that Swissport's time management system automatically rounds off the start and end times of Holmes and other similarly situated individuals. (*Id.* at ¶ 47). Thus, Holmes and other similarly situated individuals were not compensated for the actual hours they worked. (*Id.*). Holmes and other similarly situated individuals occasionally clocked-in early or clocked-out late to prepare for their shift by "mapping out plane arrival times, went out to the tarmac early to start working, or stayed late due to flight delays." (*Id.* at ¶ 49). The "rounding" off of time always inures to the benefit of Swissport and never to Holmes or other similarly situated individuals. (*Id.* at ¶ 51).

Swissport acted willfully and intentional in violating the provisions of the FLSA by not properly compensating all fuelers, including Holmes and other similarly situated individuals. (*Id.* at ¶¶ 55, 58, 59). From these violations of the FLSA, Holmes and other similarly situated

individuals suffered damages in the form of unpaid regular and/or overtime wages. (*Id.* at ¶¶ 60, 63). Swissport has been put on notice of these willful violations by the filing of other similar lawsuits in New York, California, and Florida, but still fails to update their Employee Handbook regarding the meal-period deduction and the rounding deductions. (*Id.* at 62).

**B.     Conditional Certification and Notice**

Holmes seeks conditional certification of a collective action and requests that the Court permit court-supervised notification to all similarly situated individuals. (Doc. 50 at 1). Pursuant to Holmes' Motion for Conditional Certification, Holmes seeks to facilitate notice to the following individuals:

> All current and former aircraft fuelers employed by the Defendants' located at the Southwest Florida International Airport, and/or located at any other airport in the State of Florida, and/or located at any other airport located around the country, who were not paid for all hours actually worked due to various auto-deduction policies implemented by the Defendants and who are, were or have been employed for any length of time since on or after August 30, 2013, three (3) years prior to the filing of the instant lawsuit.

(*Id.* at ¶ 3; *see also* Doc. 60 at ¶ 24).[3]  In support of his Motion, Holmes filed six (6) declarations. (*See* Docs. 51, 52, 53, 55, 56, 66).

---

[3]  The Court notes that Holmes' proposed Notice (Doc. 50 at 12-14) contains a similar – but differently worded – class description as follows:

> TO:  ALL CURRENT AND FORMER AIRCRAFT FUELERS EMPLOYED BY SWISSPORT FUELING, INC. AND SWISSPORT SA FUEL SERVICES, LLC, WHO ARE, WERE[,] OR HAVE BEEN EMPLOYED FOR ANY LENGTH OF TIME SINCE ON OR AFTER AUGUST 30, 2013. . . .

> If you are or have been employed by Swissport Fueling[,] Inc. and Swissport SA Fuel Services[,] LLC as an airplane fueler, during any period of time since August 30, 2013, and you were auto-deducted thirty (30) minutes from every workday worked for "meal breaks" were never notified of nor received due to the nature of your job [sic], or subject to a "rounding" policy[,] which deducted his [sic] time before the beginning and after the end of your shift, you may make a claim to recover those wages, as well as damages, [and] the costs and attorneys' fees of the

Swissport opposes the Motion for Conditional Certification on several grounds. (Doc. 65). First, Swissport argues that Holmes failed to demonstrate a class-wide unlawful policy or practice. (*Id.* at 6-7). Swissport also argues that Holmes failed to define the proposed class adequately in that the class is broadly defined as all current and former fuelers employed by Swissport. (*Id.* at 6-7). Second, Swissport asserts that Holmes and the Opt-In Plaintiffs are not similarly situated and a class would be unmanageable due to the individualized nature of the claims, including but not limited to, different mangers, different schedules, and different locations. (*Id.* at 9). Third, Swissport argues that even if the Court allows conditional certification, Holmes' proposed Notice is deficient. (*Id.* at 16). In support of its Response, Swissport filed a declaration, a collective bargaining agreement, other employment records, and Plaintiff's Response to Defendant's First Set of Interrogatories. (*See* Doc. 65-1).

## II.     Analysis

### A.     Conditional Certification Standard

The FLSA authorizes the use of collective actions against employers accused of violating the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). The purposes of the collective action are twofold: (1) to reduce the burden on plaintiffs by pooling their resources; and (2) to efficiently resolve common issues of fact and law that arise from the same illegal conduct. *Id.* at 1264. Basically, a collective action allows the efficient resolution of a large number of plaintiffs' claims at one time. *Id.*

An FLSA action may be maintained as follows:

---

suit. You are eligible to make a claim regardless of whether you kept records of your hours worked.

(Doc. 50 at 12-13). The Court addresses these discrepancies, *infra*.

against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Morgan*, 551 F.3d at 1258 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). Further, to participate in a collective action, each individual must affirmatively opt into the suit. *Id.* (citing *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007)).

To establish that plaintiffs are similarly situated, opt-in plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The Eleventh Circuit has adopted a two-tiered approach to determine whether a collective action should be certified under § 216(b). *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The two-tiered approach consists of the following:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district

court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims. Based on our review of the case law, no representative class has ever survived the second stage of review.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1211 (5th Cir. 1995)). At this point in the litigation, the case is at the "notice stage" and the Court must decide whether notice should be given to potential class members.

**B.      Whether Holmes Demonstrated an Unlawful Policy or Practice**

Swissport argues that Holmes failed to demonstrate a company-wide policy or practice that violated the FLSA. (Doc. 65 at 6-8). Within this issue, Swissport raises two separate arguments. First, Swissport asserts that Holmes failed to articulate a class definition with specificity. (*Id.* at 6-7). Second, Swissport argues that Holmes failed to establish a company-wide policy or practice that violates the FLSA. (*Id.* at 8). The Court addresses each issue in turn.

**1.      Class Definition**

Swissport argues that Holmes "has not alleged a class with any specificity, instead claiming he represents all fuelers" at RSW, within Florida, and nationwide. (*Id.* at 6). Swissport argues that by failing to define the class adequately, Holmes "shirks his burden and forces the decision onto the Court, requiring the Court to identify those with which Plaintiff is similarly situated, effectively requesting this Court advocate on his behalf." (*Id.*).

Here, Holmes seeks to define the putative class as "[a]ll current and former aircraft fuelers" who worked for Defendants within three years on or after August 30, 2013, who: (1) worked at RSW, in airports in Florida, or in airports around the country; and (2) "were not paid for all hours actually worked due to various auto-deduction policies implemented by Defendants." (Doc. 50 at 2). Swissport claims that this definition lacks specificity, citing

*Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-CV-1762-ORL-28JGG, 2007 WL 1079291, at *3 (M.D. Fla. Apr. 9, 2007). In *Gonzalez*, the plaintiff sought conditional certification of a collective action under the FLSA. 2007 WL 1079291, at *1-2. The court denied the plaintiff's motion to conditionally certify, finding that Plaintiff failed to define the proposed class. *Id.* at *3. In *Gonzalez*, unlike the instant case, the plaintiff failed to define the proposed class with any specificity at all and the court was left to guess at the class definition. *See id.* at *3. Thus the facts in *Gonzalez* are distinguishable from the instant case. Here, the Court finds that Holmes defined the class as stated above with sufficient specificity, with one exception as set forth below.

Although not raised by Swissport, upon consideration of the class definition here, the Court finds that the class definition is overly broad in a material respect. *See Green v. Grand Villa of St. Petersburg*, No. 8:15-CV-1973-T-30, 2015 WL 7777537, at *3 (M.D. Fla. Dec. 3, 2015) (finding that a class definition must not be too broad). Specifically, the proposed class definition in the Motion for Conditional Certification includes employees who were not paid proper wages due to "various auto-deduction policies." (Doc. 50 at 2). However, the First Amended Complaint (Doc. 60) contains allegations concerning only *two* so-called "auto-deduct" policies: (1) the thirty-minute auto-deduction for meals even when an employee was required to work during this time period; and (2) the "rounding" auto-deduction, rounding off start and end times. (*See* Doc. 60 at ¶¶ 34, 42, 47, 48). It is, therefore, unclear whether the phrase "various auto-deduction policies," as it appears in the proposed class definition, is limited to the specific "auto-deduct" policies identified in the operative complaint or whether it encompasses other unidentified policies.

Relatedly, the proposed Notice appears to contain a narrower class definition that specifically includes the two auto-deduction policies only as follows: if "you were auto-deducted thirty (30 minutes from every workday worked for 'meal breaks' . . . or subject to a 'rounding' policy[,] which deducted [t]his time before the beginning and after the end of your shift, you may make a claim to recover those wages." (Doc. 50 at 112-13). Additionally, the declarations in support of the Motion for Conditional Certification also allege narrower violations of the FLSA based only on these two auto-deduction policies. (*See*, *e.g.*, Doc. 51 at ¶¶ 14, 15, 19, 20).

Thus, the class definition set forth in the Motion for Conditional Certification does not comport entirely with the specific allegations in the First Amended Complaint, the supporting declarations filed with the Court, or the language of the proposed Notice. *See Herrera v. U.S. Serv. Indus., Inc.*, No. 2:12-CV-258-FTM-29, 2013 WL 1610414, at *3 (M.D. Fla. Apr. 15, 2013) (denying conditional certification when class definition in the Amended Complaint was narrower and did not match the class definition in the motion to certify, the proposed notice, and the declarations).

Although the Court finds the language "various auto-deduction policies" to be problematic in the proposed class definition, it is very clear from the allegations in the First Amended Complaint, the language in the proposed Notice, and the declarations that Plaintiffs intend for the class definition to encompass only those fuelers subject to either of the two (2) auto-deductions policies Plaintiffs have identified. Thus, the Court concludes that the proposed class definition is overbroad as written and must be narrowed to include only the two specific auto-deduction policies placed at issue in this case—namely, the thirty (30) minute automatic meal deduction and the "rounding" off deduction. Because the Court also finds that the proposed

class definition is deficient in other respects, *see infra*, the Court will formulate a revised class definition below that overcomes these deficiencies.

### 2. Unlawful Policy or Practice

Swissport contends that neither the auto-deduction for meals nor the rounding policies are *per se* unlawful under the FLSA and the adoption of such policies alone is insufficient to bind plaintiffs together. (Doc. 65 at 7). Here, Holmes is not asserting that the auto-deduction policies are unlawful by themselves. (Doc. 60 at ¶¶ 41, 42). Rather, he asserts that the implementation of the auto-deduction policies violates the FLSA. (*Id.*). Specifically, Holmes alleges that by deducting .5 hours from his work hours on a daily basis and then having a policy that requires employees to work during this time period violates the FLSA. (*Id.* at ¶ 44). Further, Holmes claims that specifically auto-deducting hours by rounding, which deducts the actual hours worked, also violates the FLSA. (*Id.* at ¶ 47); *see Ohsann v. L.V. Stabler Hosp.*, No. 2:07-CV-0875-WKW, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008) (holding that employees subject to same automatic meal period deduction but required to work through meal breaks due to heavy workload and understaffing satisfies the similarly situated requirement at the notice stage of litigation). Even though Swissport cites to its Handbook regarding its policy to pay overtime, Holmes alleges that Swissport's implementation of its policies violated the FLSA. The Court concludes that at this stage in the litigation, Holmes satisfactorily alleges a policy or practice that violates the FLSA.

### C. Whether Holmes Demonstrated That Others Are Similarly Situated

Holmes asserts that he is similarly situated to the other Opt-In Plaintiffs and that he is also similarly situated to fuelers who are employed by Swissport company-wide. (Doc. 50 at 6-

7). Swissport argues that Holmes cannot establish that he is similarly situated with the putative class members for a number of reasons. (Doc. 65 at 9-16).

"The key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan*, 551 F.3d at 1259 (citations omitted). The FLSA does not provide a definition as to how similar the employees must be before allowing the case to proceed as a collective action and the Eleventh Circuit has not adopted a precise definition for that term. *Id.* A plaintiff has the burden of showing a "reasonable basis" for a claim that there are other similarly situated employees. *Id.* at 1260. The standard to determine if there are other similarly situated employees is "'not particularly stringent,'" or is further described as "'fairly lenient.'" *Id.* (quoting *Hipp*, 252 F.3d at 1214).

Even though the standard is fairly lenient, a court may not rely solely on counsel's unsupported statements that FLSA violations exist and that there are additional plaintiffs that are similarly situated. *Id.* at 1261. "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012). A court must keep in mind that a "plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." *Id.* (internal citations and quotations omitted). The purpose of notice is not "to

determine *whether* there are who desire to join the lawsuit," but rather this showing must be made prior to a court authorizing that notice be sent. *Id.* (emphasis in original).

The Court first addresses whether Holmes has established that he is similarly situated with other fuelers at RSW and then addresses whether Holmes has established that he is similarly situated to fuelers on a company-wide basis.

### 1. Fuelers at RSW

Holmes claims that he easily meets the burden of showing that other fuelers at RSW are similarly situated as there are six (6) opt-in consents to join along with six (6) affidavits in support of the proposition that there are others who are similarly situated and would join if given the opportunity. (Doc. 50 at 5-6). Further, Holmes states in his declaration – which language is mirrored in all of the other declarations – that Swissport failed to pay him and other fuelers for all of the hours they actually worked due to auto-deducting meal breaks and rounding the actual time worked. (*See*, *e.g.*, Docs. 51, 52, 53 at ¶¶ 15, 19, 20). Further, Holmes and the other declarants state:

> [T]o the best of my knowledge, most, if not all aircraft fuelers employees and baggage employees of Swissport at the Southwest Florida International Airport located in Fort Myers, Florida were subject to the same auto-deduction policy and surrounding circumstances as myself. I base this on my personal knowledge of work schedules and conversations that I have had with these other employees as well as my personal observations. . . . I know that other fuelers have already joined this action.

(Docs. 51, 52, 53 at ¶¶ 22).[4]

---

[4] Although the declarations include reference to "baggage employees," the class definition, the First Amended Complaint, and the Notice do not include any reference to "baggage employees." (*Compare* Docs. 51, 52, 53 at ¶ 22, *with* Docs. 50 and 60). Thus, the Court will limit its consideration to aircraft fuelers only. "Baggage employees" will not be considered.

Swissport asserts that the declarants failed to name any other individuals that they believe would join this lawsuit. (Doc. 65 at 11). Swissport further argues that Holmes named only four (4) similarly situated individuals and these individuals have since filed notices of consent to join. (*Id.*). Swissport concludes from this statement that Holmes is unaware of other individuals who wish to join. (*Id.*). Swissport claims that the declarants' statements that other individuals wish to join the suit are "nothing more than speculative and should be discarded." (*Id.*).

Federal trial courts are not consistent in their approach to this issue. On the one hand, Swissport cites to cases from the Southern District of Florida in support of the proposition that naming only individuals that have already opted-in to the suit is insufficient to show that other employees exist that are similarly situated and desire to join the suit. (Doc. 65 at 11); *see Hoffer v. Ocwen Loan Servicing, Inc.*, No. 08-81399-CIV, 2009 WL 1404696, at *2 (S.D. Fla. May 19, 2009); *Campagnoli v. Balans Brickell, LLC*, No. 13-CV-22638-UU, 2013 WL 12064873, at *2 (S.D. Fla. Dec. 5, 2013).

On the other hand, this Court has determined that the presence of two opt-in plaintiffs, each having filed consents to join and declarations concerning their working conditions and their desire to join the lawsuit, was sufficient to establish that others would also desire to join in the action. *See Ciani v. Talk of The Town Restaurants, Inc.*, No. 8:14-CV-2197-T-33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015); *see also Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015) (finding attorney's declaration and two opt-in consents sufficient to establish a reasonable basis to believe there are other employees who may desire to opt-in); *Gonzalez v. TZ Ins. Sols., LLC*, No. 8:13-CV-2098-T-33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. Mar. 26, 2014) (finding that the presence of five opt-in plaintiffs, each having filed a declaration as to their working conditions and a desire to

join the lawsuit sufficient to meet the plaintiff's burden of demonstrating other employees seek

to join the action); *Robbins-Pagel v. Puckett*, No. 6:05CV1582 ORL31DAB, 2006 WL 3393706,

at *2 (M.D. Fla. Nov. 22, 2006) (finding even a single affidavit or consent to joint submitted by

an individual other than a plaintiff stating that he or she is similarly situated and wishes to join

the suit is enough to bring a plaintiff's contentions above pure speculation).

Here, Holmes filed declarations from himself and several other Opt-In Plaintiffs that

allege that the employees were not paid for all of the hours they worked due to having hours

auto-deducted based on two specific policies and that these policies apply to other fuelers as

well. (*See* Docs. 51, 52, 53 at ¶ 20). Under the "fairly lenient" standard appropriate at the notice

stage of this proceeding and, according to this Court's precedent, the Court finds that the filed

declarations are sufficient to establish that there are other similarly situated employees who may

be interested in joining the action, if given notice. *See Robbins-Pagel*, 2006 WL 3393706, at *2.

Next, Swissport asserts that Holmes failed to demonstrate that he is similarly situated to

the other declarants because fuelers' schedules vary, their rest periods vary, supervisors vary, and

the damages are individualized. (Doc. 65 at 11-13). Further, Swissport claims that some of the

declarants were disciplined for work infractions. (*See* Doc. 65-2 at ¶¶13, 14, 16). Holmes' and

the Opt-In Plaintiffs' declarations establish that the declarants work or worked as fuelers for

Swissport, were subject to the same employment terms and conditions, performed the same type

of work, and were paid in the same manner. (*See* Docs. 51, 52, 53, 55, 56, 66 at ¶¶ 4, 5, 6, 7, 10,

11, 19). At this stage in the litigation, the Court must rely on the pleadings and declarations, and

should not make any factual determinations or take into account any defenses. *See Robbins-*

*Pagel*, 2006 WL 3393706, at *2. Further, Holmes need establish only that his position and those

of the putative class are similarly situated, not that they are identical. *See, Hipp*, 252 F.3d at

1217. Thus, Swissport's arguments regarding schedules, rest periods, supervisors, disciplinary actions, and damages are not relevant at this stage of the litigation. *See Robbins-Pagel*, 2006 WL 3393706, at *2. These arguments are more properly addressed at the final certification or decertification stage.

Upon consideration of the pleadings and declarations, the Court finds that Holmes has established a reasonable basis to believe that other fuelers at RSW are similarly situated employees who may desire to join this action after receiving notice. Thus, the Court finds that Holmes should be permitted to send notice to current and former employees employed as fuelers at RSW.

### 2.    Fuelers Company-Wide

Even though Holmes and all of the Opt-In Plaintiffs are employees of Swissport at the RSW location, Holmes argues that fuelers at other locations throughout the country are similarly situated based upon other lawsuits being filed raising similar claims. (Doc. 50 at 6). In support of a company-wide class, the declarations contain the following language:

> I know that other fuelers and employees of Swissport at airports located around the country have brought similar actions for unpaid wages based upon payroll policies similar to those we experience at the Southwest Florida International Airport. . . . There is no question in my mind that there are other current and former employees of Swissport similarly situated to me located at Southwest Florida International Airport, at other airports located in the State of Florida, and at airports located around the country that would desire to opt-in to this lawsuit if given notice of their right to do so.

(Docs. 51, 52, 53, 55, 56, 57, 66 at ¶¶ 24, 25).

Holmes requests that the Court take note of these other lawsuits in deciding whether to expand the class outside of RSW claiming – in a conclusory fashion – that all of these cases "involve fuelers who are similarly situated to the Plaintiff and who sued the Defendants for off-the-clock wage and hour violations similar to Plaintiffs' allegations as in this case from around

the country." (Doc. 50 at 6).  The following are the lawsuits as cited by Holmes:  *Oakley v. Servisair, LLC,* Case No. 13-cv-4191 (E.D.N.Y.); *Aguilar v. Swissport S.A., LLC* Case No. 15-cv-22357 (S.D. Fla.); *Leonard et al v. Swissport SA, LLC*, Case No. 16-cv-21272 (S.D. Fla.); *Williams v. Swissport North America, Inc.*, Case No. C12-01438 (Contra Costa County Superior Court); and *Rodriguez v. Swissport North America, Inc.*, Case No. BC441173 (Los Angeles Superior Court).  In sum, the only basis that Holmes and the declarants assert that a common policy or practice exists at locations other than RSW is the filing of these other lawsuits.

Swissport disputes that conditional certification should be granted on a company-wide basis.  (Doc 65 at 9-10).  Swissport asserts that Holmes and the other Opt-In Plaintiffs were never employed by Swissport at any airport location other than RSW.  (Doc. 65 at 9).[5] Moreover, Swissport contends that fuelers at other locations had different job duties, different schedules, are subject to collective bargaining agreements as to pay rates, and are subject to different timekeeping systems.  (*Id.* at 12-15).

In support of its argument to limit the class geographically, Swissport attached the declaration of Clint Lonon, General Manager for Swissport Fueling, Inc. at RSW.  (Doc. 65-1 at ¶ 1).  Mr. Lonon states that the fuelers at RSW are not unionized, but other fuelers in different parts of the country belong to unions, such as the fuelers at Logan International Airport.  (*Id.* at ¶3).  To substantiate that statement, Mr. Lonon attached the collective bargaining agreement from that location.  (*See id.* at Exh. 1-A).  In addition, at airports other than RSW, Mr. Lonon testified that tankers must be used to transport fuel from farms to the airplanes and may be driven

---

[5] Swissport also argues that Defendant Swissport SA never employed any fuelers.  (Doc. 65 at 9-10, 13 n.5).  This issue is not properly before the Court on a motion for conditional certification and is better raised in a dispositive motion.

on public roads. (*Id.* at ¶ 10). Further, Mr. Lonon stated that the employees that drive these tankers must possess certain qualifications that other fuelers may not possess. (*Id.*).

In addition, Swissport directly addresses Holmes' assertion that these other lawsuits raise similar issues. (Doc. 65 at 13-15). Swissport argues that Holmes' claim that these other lawsuits involve fuelers who are similarly situated is inaccurate. (*Id.* at 13). Swissport contends that in *Oakley*, the asserted claims relate to a different timekeeping system – KRONOS – that was used by Servisair, LLC, a company later acquired by Swissport Fueling, Inc.'s parent company. (*Id.*). Swissport states that the *Oakley* action was filed by Servisair, LLC employees only, not Swissport employees. (*Id.*). Swissport argues that Holmes and the Opt-In Plaintiffs here were never Servisair, LLC employees and were never under the KRONOS timekeeping system. (*Id.* at 13-14).

Next, Swissport contends that the plaintiff in *Aguilar* worked at the Miami airport and was an exempt manager who claimed to be misclassified. (*Id.* at 14). Summary judgment was entered in favor of Swissport SA, LLC f/k/a Servisair, LLC. (*Id.*). Thus, the allegations in the *Aguilar* case are not similar to the case here. Next, Swissport asserts that *Leonard* was dismissed for lack of prosecution, but the plaintiffs have since moved to reopen. (*Id.*). Swissport claims that the defendants in *Leonard* are not the same defendants as in the instant matter and the employees were subject to different timekeeping practices. (*Id.*). Finally, Swissport argues that in both *Rodrigues* and *Williams*, the employees brought claims in California State Court under the California Labor Code, claiming that a thirty (30) minute meal break was not provided for employees working more than five (5) hours. (*Id.* at 14-15).

The Court finds that Holmes simply listed other lawsuits without providing any factual or legal support that these other lawsuits involved similarly situated employees of Swissport who

were subject to the same timekeeping system, had their hours auto-deducted for meals, or had their hours deducted due to rounding. Moreover, Swissport has persuasively distinguished each of the cited litigation matters. The declarants rely almost exclusively on these other lawsuits to support their contentions that there are similarly situated employees of Swissport company-wide that desire to join this action. This conclusory statement is insufficient to justify a state-wide or country-wide collective action or to justify notice being sent outside of the employees at RSW. *See Hart*, 2012 WL 6196035, at *4 (finding that plaintiffs have the burden to "make an affirmative showing that other employees from across the nation wish to join this lawsuit so as to warrant conditional certification"). The Court finds that Holmes failed to demonstrate that he is similarly situated to employees at any location other than RSW. Therefore, the Court finds that the class definition and Notice must be limited to aircraft fuelers employed at RSW only.

**D.      Notice to Potential Class Members**

Lastly, Swissport argues that should the class be conditionally certified, then the Notice and Consent to Join proposed by Holmes are deficient in numerous ways. (Doc. 65 at 16). A "trial court has a substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). By monitoring the preparation and distribution of a notice, "a court can ensure that it is timely, accurate, and informative." *Id.* at 172.

Swissport claims the following: (1) the Notice should be modified to contain the applicable limitations period of two years and not three years and should only be sent to those employees who worked for Swissport during this applicable time period; (2) certain language in the Notice is misleading; (3) the Notice fails to include language as to the potential consequences of joining the lawsuit; (4) the language in the Notice suggesting that putative class members are

or will be entitled to payment is inappropriate; (5) the Notice and Consent should indicate that the lawsuit is *conditionally* certified; (6) the language that a potential collective member should "contact Mr. Fink immediately" if he or she feels penalized, retaliated against, or discriminated against borders on solicitation; and (7) Swissport's assertions should be placed in the same portion of the Notice as Holmes' claims. (*Id.* at 16-20). The Court addresses each of these arguments in turn.

### 1. Limitations Period

Swissport argues that the Notice should be modified to contain the applicable limitations period of two (2) years and not three years from the date Notice is sent. (Doc. 65 at 16-17). Pursuant to 29 U.S.C. § 255(a), an action for minimum wages under the FLSA must be brought within two years unless it is a willful violation and then the statute of limitation extends to three years after the cause of action accrues. Swissport claims that Holmes failed to show that Defendants willfully violated the FLSA and, thus, the applicable limitations period is two years. (*Id.* at 16). In the First Amended Complaint, Holmes asserts that Swissport intentionally and willfully "cost engineered" the fuelers' work schedules. (Doc. 60 at ¶ 55). Further, Holmes alleges that Swissport has "willfully, knowingly, and/or recklessly violated the provisions of the FLSA." (*Id.* at ¶ 58, 59). Holmes also alleges that Swissport was put on notice that its policies are willful violations of the FLSA. (*Id.* at ¶ 62). Thus, Holmes has alleged a willful violation and, pursuant to 29 U.S.C. § 255(a), a three year statute of limitations applies at least at the notice stage of the litigation. *See Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 833 (11th Cir. 2013).

Nevertheless, the Court agrees that the three (3) year period does not begin on or after August 30, 2013 as requested by Holmes, but rather should be three (3) years prior to the date the

putative class member files his or her consent to join.  *See Kirk v. Dr. Goodroof, Inc.*, No. 2:14-CV-639-FTM-29CM, 2015 WL 1138445, at *3 (M.D. Fla. Mar. 13, 2015) ("[A] putative class member may pursue a claim for an FLSA violation that occurred within the three years prior to the filing of his or her consent to join." (citing *Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 13-cv-879, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013)).  This requires that the Notice be sent to any putative class member meeting the class definition during the three years prior to the date the Notice is mailed.  *Id.* at *3 n.1.  Accordingly, the Notice must be modified to include putative class members who worked for Swissport during the past three (3) years.

### 2.     Language Relating to Notice Alleged to be Misleading

Swissport asserts that the following language in the Notice is misleading:  (1) "[i]f you wish to make a claim for wages auto-deducted from your payroll, you must sign the form" attached to the Notice; and (2) "[i]f you do not sign the Notice of Consent form, you will not be allowed to recover any unpaid back wages if the plaintiffs' prevail in this case."  (Doc. 65 at 17).  First, Swissport claims that these statements suggest that potential collective members must join this matter in order to recover, but argues that these "putative opt-ins do not have to consent to join this case in order to claim damages to which they believe they are entitled."  (*Id.*).  Second, Swissport asserts that there is only one plaintiff in this case.  (*Id.*).

First, the Court agrees that these quoted statements are misleading in that they indicate that any potential class member is foreclosed from recovering if he or she does not sign a consent form.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 171.  Accordingly, this language in the Notice must be modified to prevent recipients from being misled.

Second, Swissport correctly indicates that there is only one named plaintiff in this action.  However, the Opt-In Plaintiffs "have the same status in relation to the claims of the lawsuit as do

the named plaintiffs." *See Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). Further, the statute indicates that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party." *Id.* (citing 29 U.S.C. § 216(b)). Thus, the Court finds that no correction is needed as to the terms "plaintiffs" or "party plaintiff."

### 3. Consequences Associated with Joining the Lawsuit

Swissport argues that the Notice fails to explain the consequences associated with joining the lawsuit. (Doc. 65 at 17). Specifically, if Swissport prevails, Swissport asserts that the putative class member may be liable for costs and attorney's fees in certain circumstances. (*Id.*). Also, the putative class members may be required to respond to discovery requests, appear for deposition, and/or appear for trial. (*Id.* at 17-18).

"In general, notices to potential class members in FLSA cases should contain certain information. For example, notices should include language regarding potential liability for costs and attorney's fees." *Trentman v. RWL Commc'ns, Inc.*, No. 2:15-CV-89-FTM-38CM, 2015 WL 2062816, at *4 (M.D. Fla. May 4, 2015) (citing *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *1 (M.D. Fla. Jan. 14, 2015)). Further, any notice to be approved by the court must contain both opt-in plaintiffs' rights as well as their responsibilities should they decide to opt-in to the suit. *Id.* Therefore, the Notice here must include language indicating the responsibilities of the opt-in plaintiffs to respond to discovery requests, be available for possible depositions, and be available for trial. Further, the Notice should reflect that if Holmes and the opt-in plaintiffs are unsuccessful on the merits of their claims, they may be responsible for Swissport's costs and fees in this matter. *See Trentman*, 2015 WL 2062816, at *4 (collecting cases). Accordingly, the Notice must be modified to add language describing the responsibilities and potential liabilities when joining this lawsuit.

**4.    Language Relating to Plaintiff and Opt-In Plaintiffs Being Entitled to Relief**

Swissport argues that the Notice and Consent improperly suggest that Swissport is liable and that the putative members of the class are entitled to receive payment for meal breaks and rounded time. (Doc. 65 at 18). Specifically, the Notice includes the following language:

> RIGHT TO OPT-INTO LAWSUIT TO RECOVER WAGES FOR UNPAID WAGE COMPENSATION AUTOMATICALLY DEDUCTED FROM EACH WORKDAY WHILE EMPLOYED [SIC] SWISSPORT FUELING, INC. AND SWISSPORT SA FUEL SERVICES, LLC
>
> [If] you were auto-deducted thirty (30) minutes from every workday worked for "meal breaks" [that] you were never notified of nor received due to the nature of your job, or subject to a "rounding" policy[,] which deducted [t]his time before the beginning and after the end of your shift, you may make a claim to recover those wages, as well as damages, the costs and attorneys' fees of the suit.

(Doc. 65 at 18-19; Doc. 50 at 12-13). Swissport contends that any claims suggesting that the collective members are or will be entitled to payment are inappropriate and should be stricken. (Doc. 65 at 19).

To negate any implication that a court endorses a parties' position, the Notice must contain language countering that implication. *See Trentman*, 2015 WL 2062816, at *4. Here, the statements in the Notice that supports the Court's neutrality are as follows: (1) "There is no assurance at this time that the court will grant any relief, or if granted, the nature and amount of the relief;" and (2) "The court has taken no position regarding the merits of the Plaintiffs' claim or of the Defendant's defenses." (Doc. 50 at 13, 14).

The Court finds that this repeated language in the Notice of the Court's neutrality counters any implication that the Court endorses Holmes' position. *See Trentman*, 2015 WL 2062816, at *4; *Palma v. Metropcs Wireless, Inc.*, No. 8:13-CV-698-T-33MAP, 2014 WL 235478, at *1 (M.D. Fla. Jan. 22, 2014) (finding that the language "'*The Court Has Made No*

*Finding as to the Merits of the Case at this Time* as well as other such statements sufficient to reinforce the court's neutrality when faced with language that "this is a Court-Authorized Notice." (emphasis in original)). Thus, the Court finds the language in the Notice to be sufficiently neutral.

In the Consent, Holmes proposes the following language: "I have been notified that the Court has authorized this lawsuit, filed by a former employee of Swissport Fueling, Inc. and Swissport SA Fuel Services, LLC, to recover unpaid wages, to become a collective action and that I am eligible to join this employee as a Plaintiff in that lawsuit." (Doc. 50 at 15). The Court agrees that this language is misleading. *See Hoffmann-La Roche Inc.*, 493 U.S. at 171. At this point in the litigation, the Court has not "authorized this lawsuit;" has not authorized this collective action;" has not determined that any opt-in plaintiffs are "eligible to join" this action; and has not determined that Holmes is in fact an "employee" of either Defendant. Further, Holmes failed to include sufficient language to establish the Court's neutrality. *See Palma*, 2014 WL 235478, at *1. Accordingly, the Court finds that the language of the Consent must be revised to reinforce the Court's neutrality and to ensure that any putative collective action members are not misled. *See Trentman*, 2015 WL 2062816, at *4.

## 5.  Language Relating to Certification and Signature Line in Notice

Swissport argues that the Notice and Consent forms should clarify that the collective action is *conditionally* certified and may be de-certified at a later time rather than stating that the Court "has authorized this lawsuit . . . to become a collective action." (Doc. 65 at 19). The Court finds that the language of the Notice and Consent must be revised to render it accurate. Thus, the Court finds that the Notice and Consent must expressly state that this Court has conditionally certified this action and that the Defendants may seek to de-certify the action at a

later date.  Lastly, Swissport argues that the putative class members should be required to name their employer.  The Court determines that the proposed Notice is sufficiently clear that any putative class member must be employed by Swissport Fueling, Inc. or Swissport SA Fuel Services, LLC to be eligible to join this action.  Thus, no modification of the Notice is necessary in this regard.

Swissport also takes issue with the inclusion of a signature line for a presiding judge. (Doc. 65 at 20).  Upon consideration, the Court agrees that by having a judicial officer sign the Notice, it gives the appearance that the Court may endorse one party over another.  Upon review of Notices in other actions, the Court finds that none include a judge's signature.  *See Kirk v. Dr. Goodroof, Inc.*, No. 2:14-cv-639-FtM-29CM, (Doc. 87-1); *Campbell v. Pinchers Beach Bar Grill, Inc.*, No. 2:15-cv-695-FtM-99MRM, (Doc. 35-1); *Trentman v. RWL Commc'ns, Inc. et.al.*, No. 2 15-cv-89-FtM-38CM, (Doc. 23-1).  Moreover, the Court has found no legal authority requiring that a judicial officer's signature be included with the Notice.  Accordingly, the Notice must be modified to remove the signature line reserved for a judge.

### 6. Language Concerning Retaliation

Swissport asserts that the following language "looks dangerously" like solicitation:  "[i]f you believe that you have been penalized, discriminated against or in any way disciplined as a result of your receiving this notification, you are considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you should contact Mr. Fink immediately."  (Doc. 65 at 19; Doc. 50 at 14).  Advising employees who may believe that they were retaliated against to contact the plaintiff's counsel borders on solicitation.  *See Cox v. Appliance Direct Inc.*, No. 6:08-CV-216-ORL-22DAB, 2008 WL 3050050, at *5 (M.D. Fla. Aug. 1, 2008).  Thus, the Court finds that the language in the Notice borders on solicitation and

must be modified to indicate that putative class members may contact legal counsel of their choosing.

### 7. Placement of the Parties' Positions

Swissport argues that its positions should be placed in the same portion of the Notice as Holmes' claims. (Doc. 65 at 20). A Notice to putative class members "should not appear to be weighted in favor of one side or the other." *Palma*, 2014 WL 235478, at *1. Thus, the Court agrees that the Notice must be revised so that the statement of Swissport's positions is included immediately after the description of Holmes' claims.

### 8. Other Issues Concerning the Notice and Consent

Consistent with the Court's finding *supra* that the class definition is overbroad insofar as the First Amended Complaint places at issue only two specified auto-deduct policies, the language in the Notice and Consent must also be modified to be consistent with the language in the revised class definition set forth in the Court's conclusion below.

Additionally, the Court notes that the Notice fails to include a time limit for putative collective action members to execute the Consent and provide it to counsel. The Court finds that the Notice should include a sixty (60) day time limit from the date of the Notice for putative opt-in plaintiffs to return the Consent to Plaintiff's counsel.

## III. Conclusion

The Court finds that the proposed class definition is overbroad. To alleviate the lack of specificity in the proposed class definition, the Court recommends that the class definition be revised as follows:

> All current and former aircraft fuelers employed by Swissport Fueling, Inc. or Swissport SA Fuel Services, LLC at the Southwest Florida International Airport in the past three (3) years, who were not paid for all hours actually worked as a result of either of the following two auto-deduction policies: (1) an auto-deduction that

deducted thirty (30) minutes from every workday for meal breaks, but required the employee to work during this time period; and/or (2) an auto-deduction for rounding start and end times.

(*See* Doc. 50 at ¶ 3; Doc. 50 at 12-13; Doc. 60 at 5-8; 8-12).  The Court further recommends that the language of the Notice and Consent be modified to conform to this class definition and to address the issues set forth in detail above.

**IT IS RESPECTFULLY RECOMMENDED** that the Motion for Conditional Certification and Permission to Send Court-Supervised Notification (Doc. 50) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    The Court grant conditional certification under 29 U.S.C. § 216(b) based on the following modified class definition:

> All current and former aircraft fuelers employed by Swissport Fueling, Inc. or Swissport SA Fuel Services, LLC at the Southwest Florida International Airport in the past three (3) years, who were not paid for all hours actually worked as a result of either of the following two auto-deduction policies:  (1) an auto-deduction that deducted thirty (30) minutes from every workday for meal breaks, but required the employee to work during this time period; and/or (2) an auto-deduction for rounding start and end times.

2.    Plaintiff be required to file an amended proposed Notice and Consent consistent with this Report and Recommendation (or any order of the District Judge approving, modifying, or rejecting this Report and Recommendation) by a date certain for the Court's further consideration and approval;

3.    Defendants be required to file any objections to Plaintiff's amended proposed Notice and Consent by a date certain for the Court's further consideration and approval;

4.    Upon the Court's approval of the final form of the Notice and Consent, the Court

       set a schedule for:

       a.    Defendants to produce to Plaintiff the names and last known addresses of

             all aircraft fuelers employed by Defendants at RSW within the past three

             years from the date the Notice is mailed;

       b.    Plaintiff to mail the Notice;

       c.    Plaintiff to file all Consents to Join with this Court; and

       d.    The parties to file an Amended Case Management Report addressing the

             remaining case management deadlines in this case.

5.    The Court deny the Motion to the extent Plaintiff seeks any greater or other relief

       than is recommended herein.


Respectfully recommended in Chambers in Ft. Myers, Florida on September 1, 2017.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties