UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ETHAN A. HOLMES, for himself and on
behalf of those similarly situated,

     Plaintiff,

v.                               Case No:   2:16-cv-669-FtM-38MRM

SWISSPORT FUELING, INC. and
SWISSPORT SA FUEL SERVICES, LLC,

     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is the Joint Motion for Approval of Settlement Agreement, Settlement Agreement, and Acknowledgment and General Release, filed on January 25, 2019. (Doc. 105; Doc. 105-1).  Additionally, the parties filed a Joint Supplemental Memorandum on February 19, 2019.  (Doc. 114).  Plaintiff Ethan Holmes and Opt-In Plaintiffs Brandon Buchanon, James Gant, Giovanni Rodriguez, Jalen Edwards, Kalyn Lady, and Kevin Kilmartin, and Defendants Swissport Fueling, Inc. and Swissport SA Fuel Services, LLC request that the Court approve the parties' proposed settlement of the Fair Labor Standards Act ("FLSA") claims in this litigation.

Upon consideration of the parties' submissions, the Undersigned recommends that the Court enter an order:  (1) granting the motion to approve the proposed settlement and approve the settlement; (2) dismissing this action with prejudice as to Plaintiff Ethan Holmes and Opt-In Plaintiffs Brandon Buchanon, James Gant, Giovanni Rodriguez, Kalyn Lady, Kevin Kilmartin, and Jalen Edwards; (2) dismissing this action without prejudice as to Opt-In Plaintiffs Carlos

Diaz, Bradley Alderson, Richard Hagerty, and Francisco Ortiz; and (3) directing the Clerk of Court to enter final judgment, terminate all pending motions, and close the file.

## LEGAL STANDARD

To approve the settlement of a FLSA claim, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the Fair Labor Standards Act ("FLSA"). *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Id*. at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id*. at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Id*. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages. *Id*. at 1354. The Eleventh Circuit has held that:

> [a lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*. at 1354.

**PROCEDURAL HISTORY**

A brief procedural history is instructive.  On May 17, 2017, Plaintiff, on behalf of himself and those similarly situated, filed a First Amended Complaint, bringing a collective action alleging wage violations under the FLSA.  (Doc. 60 at 1).  The following Opt-In Plaintiffs filed Notices of Consent to Join:  Bradley Alderson, (Doc. 28); Brandon Buchanon, (Doc. 29); Carlos Diaz, (Doc. 30); James Gant, (Doc. 31); Giovanni Rodriguez, (Doc. 39); and Kalyn Lady, (Doc. 48).

On September 19, 2017, the presiding District Judge entered an Opinion and Order conditionally certifying a class defined as follows:

> All current and former aircraft fuelers employed by Swissport Fueling, Inc. or Swissport SA Fuel Services, LLC at the Southwest Florida International Airport in the past three (3) years, who were not paid for all hours actually worked as a result of either of the following two auto-deduction policies: (1) an auto-deduction that deducted thirty (30) minutes from every workday for meal breaks, but required the employee to work during this time period; and/or (2) an auto-deduction for rounding start and end times.

(Doc. 73 at 2).  On December 20, 2017, the presiding District Judge approved the language for a Notice of Lawsuit and Consent to Become Opt-In Plaintiff Pursuant to 29 U.S.C. § 216(b).  (Doc. 80 at 2).  On January 12, 2018, the Undersigned authorized, *inter alia*, Plaintiff to send the approved Notice to the putative class members.  (Doc. 84 at 2-3).  Subsequent to the Notice being sent, the following Opt-In Plaintiffs filed Notices of Consent to Join:  Jalen Edwards, (Doc. 86); Richard Hagerty, (Doc. 87); Francisco Ortiz, (Doc. 88); and Kevin Kilmartin, (Doc. 89).

In addition, three Opt-In Plaintiffs withdrew their consents to join this action:  Bradley Alderson, (Doc. 90; Doc. 91); Carlos Diaz, (Doc. 92); and Richard Hagerty, (Doc. 104).  Each of these withdrawing Opt-In Plaintiffs signed Declarations that included the following language:

"My attorneys have advised me that withdrawal of my consent will result in the dismissal of all of my claims in this lawsuit." (Doc. 92 at 3 ¶ 7; Doc. 91 at 1 ¶ 7; Doc. 104 at 3 ¶ 8).

On January 25, 2019, the parties filed the instant Joint Motion for Approval of Settlement Agreement. (Doc. 105). After careful review of the parties submission, the Court entered a February 8, 2019 Order, requiring the parties to supplement their Joint Motion as to three (3) aspects of the proposed Settlement Agreement. The Court required clarification and further explanation on the three (3) Opt-In Plaintiffs who withdrew their consent, on the lack of consideration for the proposed No Re-Employment provision, and on the lack of direction for the settlement amounts as to the Opt-In Plaintiffs who are included in the Settlement Agreement but failed to execute the Settlement Agreement. (Doc. 106 at 2). In addition, on February 8, 2019, the Court entered Orders to Show Cause as to why Opt-In Plaintiffs Kalyn Lady, Francisco Ortiz, and James Gant should not be dismissed for failure to prosecute. (Doc. 107 at 1-3; Doc. 108 at 103; and Doc. 109 at 103).

Plaintiff responded by filing an executed Settlement Agreement and an executed Acknowledge and General Release for Opt-In Plaintiffs James Gant and Kalyn Lady. (Doc. 112; Doc. 113). In addition, Plaintiff filed a Joint Supplemental Memorandum on February 19, 2019, addressing the issues raised in the February 8, 2019 Order. (Doc. 114).

Before addressing the substantive issues relating to the Settlement Agreement and Acknowledgment and General Release (*see generally* Doc. 105-1), the Court addresses preliminary matters that relate to the conditional certification and to the disposition of certain Opt-In Plaintiffs.

## PRELIMINARY MATTERS

*Conditional Certification*

As stated above, on September 19, 2017, the presiding District Judge entered an Opinion and Order conditionally certifying a class.  (Doc. 73).  Thus, the class was only *conditionally* certified as a collective action and the Court has not reached a final determination as to whether this case would proceed as a certified collective action or whether the class would be decertified. In the Joint Motion, the parties address the issue of the status of the conditionally certified class. (Doc. 105 at 3).  The parties assert that several Opt-In Plaintiffs filed notices of consent to join prior to Plaintiff filing the Motion for Conditional Certification.  (*Id.* at 3).  After conditional certification of the collective action, Plaintiff sent Notices and the remaining Opt-In Plaintiffs joined the action.  (*Id.*).

In FLSA collective actions, the Eleventh Circuit has adopted a two-tiered approach to determine whether a collective action should be certified under § 216(b).  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).  The first stage is the notice stage where in cases – such as the instant case – a court conditionally certifies the class and the class members are given notice and the opportunity to opt-in.  *Id.*  The second stage is generally precipitated by a motion for decertification that is filed after discovery is largely completed and the matter is ready for trial.  *Id.*

In this case, the Notice was sent to putative class members.  (Doc. 85).  Thus, all eligible employees received notice and the opportunity to opt-in if they chose and were qualified.  Only after notice was sent and the time to respond lapsed, did the parties enter into the proposed settlement.  (*Id.*).  Additionally, all of the individuals who chose to opt-in or join this lawsuit had the opportunity to consider the terms and conditions of the settlement of this action and had the

opportunity to object to it.  This is demonstrated by some of the Opt-In Plaintiffs choosing to withdraw their consent, (Doc. 90; Doc. 91; Doc. 92; Doc. 104), one Opt-In Plaintiff Francisco Ortiz choosing not to sign the Settlement Agreement and not to respond to the Order to Show Cause, (Doc. 108),[1] and Plaintiff and the remaining Opt-In Plaintiffs choosing to sign the Settlement Agreement and the Acknowledgement and General Release, (Doc. 105-1; Doc. 112; Doc. 113).  Thus, the Court was not left to wonder as to the number of putative plaintiffs in the class nor whether the Opt-In Plaintiffs individually agreed to the terms and conditions of the Settlement Agreement and Acknowledgement and General Release.  *See Hosier v. Mattress Firm, Inc.,* No. 3:10-CV-294-J-32JRK, 2011 WL 7071062, at *2 (M.D. Fla. Dec. 29, 2011), *report and recommendation adopted,* No. 3:10-CV-294-J-32JRK, 2012 WL 177533 (M.D. Fla. Jan. 23, 2012) (refusing to approve a settlement without knowing the number of plaintiffs in the class and without the opt-in plaintiffs having any way to object to the proposed settlement terms).  Thus, the Court finds that approval of the settlement may go forward at this stage of the litigation.

   *Opt-In Plaintiffs Who Withdrew Their Consents*

   Opt-In Plaintiffs Carlos Diaz, Bradley Alderson, and Richard Hagerty filed consents to join and subsequently filed notices of withdrawal of these consents.  (*See* Doc. 28; Doc. 30; Doc. 87; Doc. 90; Doc. 92; Doc. 104).  In the Joint Motion for Approval of Settlement Agreement (Doc. 105), the parties did not address the disposition of these Opt-In Plaintiffs.  Thus, in its

---

[1]  Plaintiff states that Opt-In Plaintiff Ortiz is dissatisfied with the settlement amount "despite previously consenting to the settlement agreement in principle."  (Doc. 105 at 9).  Plaintiff's counsel states that he communicated with Opt-In Plaintiff Ortiz and Opt-In Plaintiff Ortiz "demanded to be removed from this lawsuit and to not be contacted by Plaintiff's counsel any further."  (*Id.*).  Based on these representations, the Undersigned finds that Opt-In Plaintiff Ortiz was aware of the terms of the settlement, but chose not to participate in the settlement.  Thus, the Undersigned recommends that Opt-In Plaintiff Ortiz's claims be dismissed without prejudice.

February 8, 2019 Order, the Court raised a concern as to disposition of these parties. (Doc. 106 at 2). In the Joint Supplemental Memorandum, the parties addressed this concern. (Doc. 114 at 2). The parties stated that "[f]ormer Opt-In Plaintiffs Diaz, Alderson, and Hagerty, all filed Notices of Withdrawal [of] their respective Consents to Join the purported collective action." (Id.). The parties state that within each of the Notices of Withdraw is the language, "'withdrawal of [his]consent will result in the dismissal of all of [his] claims in the lawsuit.'" (Id.). Thus, the parties submit that these former Opt-In Plaintiffs' claims should be dismissed without prejudice. (Id.).

As the parties have pointed out, the withdrawing Opt-In Plaintiffs indeed signed Declarations that included the following language: "My attorneys have advised me that withdrawal of my consent will result in the dismissal of all of my claims in this lawsuit." (Doc. 92 at 3 ¶ 7; Doc. 91 at 1 ¶ 7; Doc. 104 at 3 ¶ 8). Based upon the Opt-In Plaintiffs' withdrawal and their signed acknowledgments of the procedural consequence of withdrawal, the Undersigned recommends that the claims of Opt-In Plaintiffs Carlos Diaz, Bradley Alderson, and Richard Hagerty be dismissed without prejudice.

*Unresponsive Opt-In Plaintiff*

Opt-In Plaintiff Francisco Ortiz did not execute the Settlement Agreement and did not withdraw his consent. Consequently, the Court entered an Order to Show Cause on February 8, 2019, requiring Mr. Ortiz to show good cause on or before February 22, 2019, why this action should not be dismissed against him due to his failure to prosecute. (Doc. 108 at 2).

The Court explained that pursuant to Local Rule 3.10, "[w]henever it appears that any case is not being diligently prosecuted the Court may, on motion of any party or on its own motion, enter an order to show cause why the case should not be dismissed, and if no satisfactory

cause is shown, the case may be dismissed by the Court for want of prosecution." (*Id.* (citing M.D. Fla. R. 3.10)).  The Court cautioned Mr. Ortiz that if he did not respond to the Order to Show Cause by February 22, 2019, the court would recommend that his claims in this case would be dismissed without prejudice for failure to prosecute.  (*Id.*).

Mr. Ortiz failed to respond to the Order to Show Cause.  Accordingly, the Undersigned recommends that Mr. Ortiz's claims be dismissed without prejudice for failure to prosecute.

*Money Allocated to Non-Signatories to the Settlement Agreement*

In the Settlement Agreement, the parties allocated settlement funds to Opt-In Plaintiffs Richard Hagerty and Francisco Ortiz who did not execute the Settlement Agreement.  (Doc. 105-1 at 3).  The parties agree that any money allocated to any individual who did not execute the Settlement Agreement will remain with Defendant Swissport Fueling.  Thus, the Undersigned finds and recommends that the money allocated in the proposed Settlement Agreement to Richard Hagerty and Francisco Ortiz remain with Swissport Fueling.  Because the Undersigned also recommends that Richard Hagerty's claims and Francisco Ortiz's claims be dismissed without prejudice, these matters should not prevent the Court from approving the proposed settlement.

The Undersigned turns next to the substantive claims, defenses, and terms of the proposed settlement.

## THE CLAIMS, DEFENSES, AND PROPOSED SETTLEMENT

In the First Amended Complaint, Plaintiff claims that Defendants failed to compensate him and similarly situated employees for hours worked, including overtime hours.  (Doc. 60 at 2).  The parties agree that there are bona fide disputes as to whether Plaintiff and Opt-In Plaintiffs are entitled to overtime wages.  (Doc. 105 at 4).  Specifically, Defendants dispute

whether Plaintiff and Opt-In Plaintiffs worked uncompensated overtime hours, the computation of uncompensated overtime hours, and if Defendants knew or should have known that Plaintiff and Opt-In Plaintiffs worked over forty (40) hours in a workweek.  (*Id.*).  Further, Defendant Swissport SA claims it did not employ Plaintiff and Opt-In Plaintiffs and Swissport Fueling claims that it paid Plaintiff and Opt-In Plaintiffs for all of the hours they worked.  (*Id.*). Defendants further claim that if Plaintiffs worked over forty (40) hours per weeks, Defendants had a mechanism in place for Plaintiff and Opt-In Plaintiffs to report such hours.  (*Id.*). Defendants also claim that Plaintiff and Opt-In Plaintiffs never availed themselves of this mechanism and, thus, Defendants neither knew or should have known that Plaintiff and Opt-In Plaintiffs worked these hours.  (*Id.*).

*Monetary Terms of the Settlement Agreement*

Under the terms of the Settlement Agreement, Defendants agree to pay Plaintiff and Opt-In Plaintiffs as follows:[2]

| Name | Wages | Liquidated Damages | Other Compensation |
|------|-------|--------------------|--------------------|
| Ethan Holmes | $1,966.29 | $1,966.28 | $100.00 |
| Brandon Buchanon | $1,707.06 | $1,707.05 | $100.00 |
| James Gant | $1,169.03 | $1,169.03 | $100.00 |
| Giovanni Rodriguez | $666.62 | $666.61 | $100.00 |
| Kalyn Lady | $473.28 | $473.27 | $50.00 |
| Kevin Kilmartin | $251.75 | $251.75 | $50.00 |
| Jalen Edwards | $61.10 | $61.10 | $50.00 |

---

[2]  In the Settlement Agreement, the parties included settlement sums for Richard Hagerty and Francisco Ortiz.  (Doc. 105-1 at 3).  Mr. Hagerty withdrew his consent and never executed the Settlement Agreement.  Thus, the Court recommends, *supra*, that he be dismissed from this action without prejudice.  Mr. Ortiz never responded to the Order to Show Cause and never executed the Settlement Agreement.  Thus, the Court recommends, *supra*, that he be dismissed from this action without prejudice.

(Doc. 105-1 at 2-3).  The parties state that the negotiated settlement is a reasonable compromise of the disputed issues.  (Doc. 105 at 7).  The Undersigned finds that based on the representations of the parties, these amounts are a fair and reasonable resolution of the claims in this action as to Plaintiff and these Opt-In Plaintiffs.

*No Re-Employment Provision*

The Settlement Agreement contains a "No Re-Employment" provision that provides as follows:

> To the extent that a Plaintiff no longer is employed by Swissport, that Plaintiff disclaims and waives any right of reinstatement or future employment with either of the Swissport Entities, the Releasees (as defined in the Release signed by Plaintiff) or any successors or assigns thereof, and further agrees not to seek employment with either of the Swissport Entities, the Releasees, or any successors and assigns thereof, now or at any future time.  This Agreement shall constitute a legitimate, nondiscriminatory, and non-retaliatory reason for refusal to employ a Plaintiff.

(Doc. 105-1 at 4 ¶ 7).  The Court raised concerns regarding the inclusion of this provision in its February 8, 2016 Order.  (Doc. 106 at 3-4).  The *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement.  *Shearer v. Estep Const., Inc.*, No. 6:14-CV-1658-ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).  A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement, and require their own fairness finding.  *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, 2012 WL 933023 (M.D. Fla. Mar. 20, 2012).

In the Joint Supplemental Memorandum, the parties addressed this issue. (Doc. 114 at 2-3).  The parties state that:

> All Plaintiffs voluntarily resigned their positions prior to the Parties reaching settlement in this case, demonstrating that they no longer wish to be employed by Swissport Fueling.  Plaintiffs' counsel hereby represents that none of the Plaintiffs seek re-employment by Swissport Fueling or any related entity.  Indeed, Swissport Fueling no longer runs the fueling operations at Southwest Florida International Airport (the location at issue).  The No Re-Employment provision, therefore, does not make the settlement unfair.

(*Id.* at 2).

This Court has held that "[n]o reemployment clauses are different from general releases, in that the plaintiffs, as former employees of the defendants, know exactly what they are relinquishing when they agree not to seek future employment with the defendants.  There is no indication that the clause undermines the fairness of the Agreement, and it does not preclude approval of the Agreement." *Rivera v. CO2Meter*, No. 617-CV-156-ORL28GJK, 2018 WL 3213329, at *5 (M.D. Fla. June 14, 2018), *report and recommendation adopted sub nom.*, *Rivera v. CO2Meter, Inc.*, No. 617-CV-156-ORL28GJK, 2018 WL 3212455 (M.D. Fla. June 29, 2018) (citing *Robertson v. Ther-RX Corp.*, No. 2:09-cv-1010–MHT (WO), 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011)); *see also*, *Cruz v. Winter Garden Realty*, LLC, No. 6:12-CV-1098-ORL-22, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) ("Likewise, where a plaintiff indicates that she does not desire re-employment, the inclusion of a waiver of future employment does not render the settlement unfair.").

Here, Plaintiffs represent that they no longer wish to be employed by Defendants.  (Doc. 114 at 2).  Plus, Defendants state that they no longer run a fueling operation at the airport.  (*Id.*).  Thus, Plaintiffs know exactly what they are relinquishing by agreeing to a no re-employment provision.  Accordingly, the Undersigned finds this provision does not render the settlement unfair or unreasonable.

*General Release*

In addition to executing the Settlement Agreement, Plaintiff and Opt-In Plaintiffs

executed Acknowledgment and General Release forms.  (*See e.g.*, Doc. 105-1 at 26-27).  These

documents release Defendants from all claims that could arise from Plaintiff's and Opt-In

Plaintiffs' employment under a multitude of statutes.  (*Id.* at 27).  As states above, the *Lynn's*

*Food Stores* analysis necessitates a review of the proposed consideration as to each term and

condition of the settlement, including foregone or released claims.  *Shearer v. Estep Const., Inc.*,

No. 6:14-CV-1658-ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).  The valuation

of unknown claims is a "fundamental impediment" to a fairness determination.  *Id.*; *see also*

*Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010).  The Court typically

"cannot determine, within any reasonable degree of certainty, the expected value of such

claims."  *Id.*  Thus, the task of determining adequate consideration for forgone claims is

"difficult if not impossible."  *Id.* (citation omitted).

Additionally, this Court has found that general releases in FLSA cases are often unfair to

plaintiffs.  *See Moreno*, 729 F. Supp. 2d at 1351.  Specifically, "[a]lthough inconsequential in the

typical civil case (for which settlement requires no judicial review), an employer is not entitled to

use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to

leverage a release from liability unconnected to the FLSA."  *Id.*  The Court has found that "a

pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair

benefit on the employer."  *Id.* at 1352.

However, if a plaintiff receives additional and separate consideration unrelated to the

value of a plaintiff's claim to enter into a general release, then the general release can be

permissible.  *Pariente v. CLC Resorts & Developments, Inc.*, No. 6:14-CV-615-ORL, 2014 WL

6389756, at *5 (M.D. Fla. Nov. 14, 2014).  Here, the parties included additional and separate consideration for Plaintiff and Opt-In Plaintiffs to enter into the Acknowledgment and General Release.  (Doc. 105-1 at 2-3).  The Undersigned finds that based on this additional consideration, the Settlement Agreement and Acknowledgement and General Release appear fair and reasonable.

*Attorney's Fees*

Defendants agree to pay Plaintiff's and Opt-In Plaintiffs' attorney's fees and costs in the amount of $26,500.00.[3]  (Doc. 105-1 at 3 ¶ 2(j)).  The parties negotiated the amount of attorney's fees and costs separately, and without regard to the amount paid to Plaintiff and Opt-In Plaintiffs.  (Doc. 105 at 7).  As explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.  If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."  In *Bonetti*, Judge Presnell concluded that:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable

---

[3]  In the Joint Motion, the parties state, "[c]ounsel for Plaintiff and Opt-Ins will receive one check in the amount of $26,481.98, consisting of $19,911.00 in attorney fees and $6,589.00 in costs."  (Doc. 105 at 6).  The amounts of $19,911.00 and $6,589.00 add up to an even $26,500.00 and not $26,481.98 as represented by the parties.  In addition, in the Settlement Agreement, the parties agree to pay Plaintiff's counsel $26,500.00.  (Doc. 105 at 3 ¶ 2(j)).  Thus, the Undersigned will base its award on the terms of the Settlement Agreement and recommend an award of $26,500.00.

on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.*

In the instant case, the parties reached a settlement and agreed upon the amount of attorney's fees and costs without compromising the amount paid to Plaintiff and Opt-In Plaintiffs.  (Doc. 105 at 7).  Thus, the Undersigned finds that the amount of attorney's fees is reasonable.

## CONCLUSION

The Undersigned finds that the Settlement Agreement and Acknowledgment and General Release (Docs. 105-1, 112, 113) appear reasonable on their face.  Accordingly, the Undersigned recommends that the Joint Motion for Approval of Settlement Agreement (Doc. 105) be granted and the Settlement Agreement and Acknowledgement and General Release (Docs. 105-1, 112, 113) be approved.

Accordingly, it is **RESPECTFULLY RECOMMENDED** that:

1)    The Joint Motion for Approval of Settlement Agreement (Doc. 105) be

       **GRANTED**.

2)    The Settlement Agreement and Acknowledgment and General Release (Docs.

       105-1, 112, 113) be approved as a "fair and reasonable resolution of a *bona fide*

       dispute" of the parties' FLSA issues.

3)    If the presiding District Judge adopts this Report and Recommendation, then the

       Clerk of Court be directed:  (a) to dismiss this action with prejudice as to Plaintiff

       Ethan Holmes and Opt-In Plaintiffs Brandon Buchanon, James Gant, Giovanni

       Rodriguez, Kalyn Lady, Kevin Kilmartin, and Jalen Edwards; (b) dismiss this

action without prejudice as to Opt-In Plaintiffs Carlos Diaz, Bradley Alderson, Richard Hagerty, and Francisco Ortiz; and (c) terminate all pending motions, and close the file.

4)      The funds allocated to Richard Hagerty and Francisco Ortiz in the Settlement Agreement remain with Swissport Fueling.

Respectfully recommended in Chambers in Ft. Myers, Florida on March 11, 2019.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.



Copies furnished to:

Counsel of Record
Unrepresented Parties